UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| ELIZABETH T. POWERS and NICHOLAS POWERS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08-CV-2267 |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

This case is before the court for ruling on the Motion to Quash Subpoena (#31) filed by Plaintiffs, Elizabeth T. Powers and Nicholas Powers (#31). Following this court's careful review of the Plaintiffs' Motion and the Response (#34) filed by Defendant, the Board of Trustees of the University of Illinois (University), Plaintiffs' Motion to Quash Subpoena (#31) is DENIED.

### BACKGROUND

On November 4, 2008, Plaintiffs filed their Complaint (#1) against the University. In Counts III and IV, Plaintiffs alleged that the University retaliated against them by refusing to pay Plaintiffs for work they had performed unless they withdrew charges of discrimination. Specifically, Plaintiffs alleged:

> 18. On June 5, 2006, Elizabeth and Nicholas filed charges of discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC), being EEOC Charge Numbers 21 BA 61958 and 21 BA 61959, respectively.
>
> . . .

21. On June 15, 2006, before he had knowledge that the charges had been filed, [Robert F.] Rich offered to partially pay Plaintiffs for the work they had performed on a "take it or leave it basis." On June 19, 2006, Plaintiffs accepted Rich's offer to pay Elizabeth and Nicholas for the work they had performed on the study and report.

22. After Rich learned of the discrimination charges filed by Elizabeth and Nicholas with the IDHR and EEOC, he refused to pay them for the work they had performed unless they withdrew all of their charges.

In their Answers to Interrogatories, Plaintiffs identified their attorneys, Zimmerly, Gadau, Selin and Otto, as having information regarding the occurrences complained of and damages. With regard to the claims of retaliation, both Plaintiffs identified communications between agents of the University and John Otto, attorney for Plaintiffs, which directly reference the matters pleaded in paragraphs 18, 21, and 22 of Plaintiffs' Complaint.

## MOTION TO QUASH

On August 30, 2010, Plaintiffs filed a Motion to Quash Subpoena (#31). Plaintiffs stated that John Otto is and, at all times relevant, has been the attorney for Plaintiffs in this matter. Plaintiffs stated that "John Otto has acted in no capacities in this matter other than as attorney for the plaintiffs, and, therefore, all of his communications with the plaintiffs are protected by attorney-client privilege." Plaintiffs further stated that, prior to the filing of this lawsuit, Otto engaged in negotiations with Laura Clower, an attorney in the University's Legal Counsel's office, regarding

a proposed settlement agreement. Plaintiffs stated that the "proposed settlement was never agreed to nor signed by any of the parties."

Plaintiffs stated that, on August 24, 2010, Plaintiffs took the deposition of Larry Mann, a retired employee of the University. Plaintiffs stated that Otto's name did not come up during Mann's deposition. Following Mann's deposition, William Brinkman, one of the attorneys for the University, stated that he would have to take Otto's deposition. Plaintiffs stated that this was the first time Brinkman said he would have to take Otto's deposition. Plaintiffs stated that Otto would not agree to have his deposition taken on the grounds that he had no relevant information not already in the possession of Defendant and that all communications with his clients are protected by attorney-client privilege. Plaintiffs further stated that the discovery cutoff date in this case was August 31, 2010. Plaintiffs stated that, on August 30, 2010, at approximately 3:20 p.m., Otto was served with a subpoena for his deposition to be taken at the office of Thomas, Mamer & Haughey at 9:00 a.m. on August 31, 2010. Plaintiffs stated that Otto had a court appearance scheduled at that time. Plaintiffs stated that "[c]ounsel for both parties are well aware of the rule that a person cannot appear both as a witness and as attorney for one of the parties in a case." Plaintiffs argued that the University's attempt to require Otto to submit to a deposition was an "attempt to sow confusion at the last minute" and a possible attempt "to require Plaintiffs' counsel to withdraw from the case." Plaintiffs further argued that there was no legitimate reason to require Otto to submit to a deposition with less than 24 hours notice on the last day of discovery. Plaintiffs asked this court to quash the subpoena issued by counsel for the University. Plaintiffs did not cite any authority in support of their request.

On September 16, 2010, the University filed its Response to Motion to Quash (#34) with

3

attached supporting exhibits. The exhibits included Plaintiffs' Answers to Interrogatories, copies of letters and emails regarding the claims in this case and a portion of the transcript of the deposition of Larry Mann taken on August 24, 2010. The University stated that, after June 5, 2006, the date Plaintiffs filed their charge of discrimination, Plaintiffs and their attorney, John Otto, were negotiating with the University, including the office of the legal counsel for the University, without disclosing that the claims had been filed. The University stated that Laura Clower and Lisa Huson, attorneys for the University, were identified by Plaintiffs as persons in possession of information regarding Plaintiffs' claims. Clower's involvement related to negotiations to pay Plaintiffs, which were referenced in the Complaint. According to the University, Clower's discussions were directly with Otto. The University stated that its counsel, William J. Brinkman, had discussed with Otto his disclosure as a witness and the possible need for a deposition. The University stated that, during the deposition of Larry Mann on August 24, 2010, "it became clear that Plaintiffs' retaliation claim was based upon a purported 'agreement' to pay Plaintiffs made as a result of negotiations, involving John Otto, after charges of discrimination had been filed but before notice of those charges were disclosed to [the University]." The University stated that it then directly requested a deposition from Otto and he refused. Therefore, the University served a Notice of Deposition (#29) and a Subpoena (#30).

      The University argued that it is entitled to depose Otto in this case. It pointed out that, in Plaintiffs' Motion to Quash, Plaintiffs stated that the negotiations involving Otto regarding a proposed settlement did not result in an agreement. However, in their Complaint, Plaintiffs alleged that an agreement was reached with the University, but the University refused to comply with the terms of the agreement unless Plaintiffs withdrew their charges of discrimination. The University argued that Plaintiffs' claim that a deposition of Otto would involve attorney-client privilege "is

4

premature and presumes that the questions to John Otto would relate to communications with his client[s]." The University contended that the record before this court reflected Otto's involvement in communications with agents of the University and with the office of legal counsel for the University, many of which were verbal and which would not be subject to any privilege. The University cited pertinent authority in support of its arguments. This court agrees with the University that a deposition of Otto can be taken in this case.

Rule 30(a)(1) provides civil litigants with a "general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002); Wilson v. O'Brien, 2010 WL 1418401, at *1 (N.D. Ill. 2010), appeal dismissed ___F.3d ___, 2010 WL 3447650 (7th Cir. 2010). Thus, "an attorney may be deposed, even if he or she represents a party to the litigation in issue." Hunt Int'l Res. Corp. v. Binstein, 98 F.R.D. 689, 690 (N.D. Ill. 1983); see also Taylor Mach. Works, Inc. v. Pioneer Distrib. Inc., 2006 WL 1686140, at *1-2 (C.D.Ill. 2006). However, a "subpoena must be quashed when, *inter alia*, it will result in the disclosure of a matter that is privileged or otherwise protected (provided that no exception to or waiver of the protection exists) or when compliance with it would impose an undue burden upon the subpoenaed party." Wilson, 2010 WL 1418401, at *1, citing Fed. R. Civ. P. 45(c)(3)(A)(iii),(iv). The district court in Wilson noted that trial counsel is not immune from deposition and concluded that the correct approach, when confronted with a request for a deposition of opposing counsel, is "one of flexibility and consideration of all the circumstances presented in a particular case." Wilson, 2010 WL 1418401, at *2. Under this approach, discovery can proceed "until a clear obstacle is encountered." Wilson, 2010 WL 1418401, at *2.

The district court in Qad.inc v. ALN Assocs., Inc., 132 F.R.D. 492 (N.D. Ill. 1990), used a

similar approach in concluding that the deposition of lead counsel for the plaintiffs could proceed. The court noted that the plaintiffs' motion for a protective order in that case reflected "a kind of misperception as to the general impermissibility of any discovery targeting lawyers." Qad.inc, 132 F.R.D. at 493. The court went on to discuss that there are "special reasons for discouraging any widespread tendency to target lawyers as the subjects of discovery," including the possibility that the attorney may be disqualified form representing the clients in the litigation. Qad.inc, 132 F.R.D. at 493-94. The court stated:

> Even apart from that possibility of lawyer disqualification, the taking of a lawyer's deposition poses the potential for invasion of client confidences and secrets (things that are insulated from disclosure both by attorney-client privilege and by Code DR 4-101 and proposed Model Rule 1.6) and also for invasion of lawyer thought processes (which are insulated from disclosure by the work-product rule). But it is a mistake to translate those entirely legitimate needs for the protection of lawyer-client privileged communications and of lawyers' privileged thought processes into a kind of global protection of lawyers as a privileged class. Privileged documents do not equate to privileged classes of people.

Qad.inc., 132 F.R.D. at 494. The court further noted that the attorney-client privilege "protects only confidential communications by a client to an attorney made in order to obtain informed legal assistance." Qad.inc., 132 F.R.D. at 494, quoting In re Grand Jury Proceeding, Cherney, 898 F.2d 565, 567 (7th Cir. 1990). The court concluded that, where the opposing party was seeking to

discover only communications that the lawyer made to third parties which did not implicate work product considerations, the lawyer's deposition could be taken. Qad.inc., 132 F.R.D. at 494-95. The court stated that it subscribed "wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course." Qad.inc., 132 F.R.D. at 495. The court stated that the deposition would proceed and, in the unlikely event that issues of lawyer-client privilege or work product arose during the course of the deposition, those claims could be raised and would promptly be resolved by the court. Qad.inc., 132 F.R.D. at 495.

The court in Qad.inc., concluded that the standard set out by the Eighth Circuit Court of Appeals in Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986) "must be viewed as wrong." Qad.inc., 132 F.R.D. at 495. In Shelton, the court concluded that a deposition of opposing counsel should be limited to situations where the party seeking the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. Shelton, 805 F.2d at 1327. The Shelton approach has not been addressed or adopted by the Seventh Circuit or the United States Supreme Court. See Wilson, 2010 WL 1418401, at *2. However, numerous district courts in this circuit have accepted and followed the standard set out in Shelton. Newell v. Wis. Teamsters Joint Council No. 39, 2007 WL 2874938, at *7 (E.D. Wis. 2007 (collecting cases); see also Howard v. Securitas Security Servs., 630 F. Supp. 2d 905, 910-12 (N.D. Ill. 2009); Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc., 257 F.R.D. 456, 464-65 (N.D. Ill. 2008).

In Taylor Mach. Works, Magistrate Judge John A. Gorman recognized the dispute regarding

the application of the Shelton standard. Judge Gorman noted, however, that those courts that applied Shelton "did so flexibly, considering such factors as: the need to take the deposition; the lawyer's role in the underlying action and in the primary action; the risk of encountering privilege and interfering in the attorney client relationship; avoiding unnecessary expense; and the means and extent of discovery already conducted to obtain the information to be gleaned from the attorney." Taylor Mach, Works, 2006 WL 1686140, at *3; see also Newell, 2007 WL 2874938, at *7. In Taylor Mach. Works, Judge Gorman concluded that the party seeking the deposition had not shown that the deposition was necessary and the motion to quash the subpoena was granted. Taylor Mach. Works, 2006 WL 1686140, at *4. In making this determination, Judge Gorman noted that the attorney "was not personally involved in any of the underlying events that formed the basis for that litigation." Taylor Mach. Works, 2006 WL 1686140, at *1.

Unlike the situation in Taylor Mach. Works, in this case, Otto's law firm was disclosed in Plaintiffs' Answers to Interrogatories as having information regarding the occurrences complained of and damages. This court concludes that, under the standard set out by Judge Gorman, the University has shown that Otto's deposition should be taken in this case. The University has shown a need to take the deposition based upon Otto's involvement in the negotiations and Plaintiffs' conflicting statements regarding whether agreement was reached between Plaintiffs and the University. In addition, the University has stated that it is only interested in questioning Otto regarding his communications with agents of the University and with the office of legal counsel for the University, which would not be subject to any privilege. Furthermore, the University has shown that the discovery already conducted has led to the conclusion that the deposition of Otto is necessary to obtain information related to the claims of retaliation. Moreover, because any

questioning of Otto must be narrow in scope, the deposition of Otto will be very brief so that it should not lead to unnecessary expense. Based upon the standard set out in <u>Wilson</u> and <u>Qad.inc.</u> as well as the standard set out in <u>Taylor Mach. Works</u>, this court concludes that the University can take Otto's deposition.

 IT IS THEREFORE ORDERED THAT:

 (1) Plaintiffs' Motion to Quash Subpoena (#31) is DENIED.

 (2) Plaintiffs' attorney, John Otto, is ordered to appear for deposition within 10 days of this Opinion.

 (3) This court specifically instructs the University to avoid any inquiry which would raise issues of lawyer-client privilege or work product. In the unlikely event that those issues arise during the course of the deposition, those claims should be brought to this court for prompt resolution.

 (4) This case remains scheduled for a final pretrial conference on February 25, 2011, at 2:30 p.m., and a jury trial on March 14, 2011, at 9:00 a.m.

    ENTERED this 23rd day of September, 2010

      **s/ Michael P. McCuskey**
      MICHAEL P. McCUSKEY
      CHIEF U.S. DISTRICT JUDGE