**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

_____

| | |
|---|---|
| **ELIZABETH T. POWERS and NICHOLAS J. POWERS,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | )      **Case No. 08-CV-2267** |
| | ) |
| **BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,** | ) ) ) |
| **Defendant.** | ) ) |

**OPINION**

This case is before the court for ruling on various pre-trial motions filed by the parties. This court has carefully considered all of the motions, the responses to the motions, and the documents filed by the parties. Following this careful and thorough review, this court rules as follows: (1) the Motion in Limine (#49) filed by Plaintiffs, Elizabeth T. Powers (Elizabeth) and Nicholas J. Powers (Nicholas), is GRANTED in part and DENIED in part; (2) the First Motion in Limine (#47) filed by Defendant Board of Trustees of the University of Illinois (University) is DENIED; (3) the University's Second Motion in Limine (#48) is GRANTED; and (4) Plaintiffs' Motion to Strike John Otto from Defendant's Witness List (#58) is DENIED. This case remains scheduled for a status conference by personal appearance on June 1, 2011, at 3:30 p.m.

BACKGROUND[1]

Elizabeth and Nicholas are married to each other. Elizabeth is employed by the University as an associate professor with tenure in the Institute of Government and Public Affairs (IGPA). Nicholas has worked for the University as a research associate in the IGPA. Elizabeth's contract

_____

[1] This court's recitation of the facts is based upon the documents submitted by the parties related to the Motion for Partial Summary Judgment previously filed by Plaintiffs.

with the University is a nine-month appointment and she receives compensation only for August 15 through May 15 each year.

In 2004, the Illinois legislature appropriated $300,000 for the University to conduct a study and analyze state reimbursement levels to community providers of mental health and developmental disability services. The legislation provided that the "study must conclude and be submitted to the House Human Services Appropriations Committee and the Senate Appropriations I Committee by March 31, 2005." In November 2004, Elizabeth agreed to serve as project director of the study. Elizabeth had planned to take a sabbatical during the 2004-2005 academic year but agreed to postpone the sabbatical to the next academic year in order to conduct the study. Elizabeth entered into a written contract regarding her work on the study. Nicholas worked on the study as well and was paid $70,000 for work performed from October 16, 2004 to July 15, 2005.

Based upon the submissions of the parties, it appears that a preliminary report was prepared by March 31, 2005, but additional work was necessary for a final version of the report. Elizabeth and Nicholas continued working on the study during the 2005-2006 academic year. It is undisputed that it was not expected that funding for the study by the state would continue after July 31, 2005. On July 1, 2005, Robert Rich took over as the director of the IGPA. A dispute arose between Rich and Plaintiffs regarding payment for the completion of the study. In a letter to Elizabeth dated April 11, 2006, Rich stated:

> [I]t has been more than a year since the preliminary report was
> published and, as I am sure you know, both the enabling legislation
> and the scope of work for the project called for a final report to be
> delivered to the House Human Services Appropriations Committee

and the Senate Appropriations I Committee by March 31, 2005. The lateness of the final report is reflecting poorly on the University, IGPA, and you.

I am sure you are aware that, in addition to the $300,000 in state funds made available for this project, IGPA has invested its own resources, including additional salary support for Nick Powers.

Rich concluded the letter by stating the it was his belief that Elizabeth was "failing to meet the terms of [her] obligation to the General Assembly and to the University." Elizabeth provided a lengthy response and, among other things, insisted that she and Nicholas had been assured they would be paid for their additional work on the study. By June 2, 2006, the matter still had not been resolved. Rich wrote a letter to Elizabeth that day and stated that IGPA was prepared to offer Nicholas $13,611.11 for three and one half months of work he devoted to the project and would pay Elizabeth $22,000.

On June 5, 2006, Elizabeth and Nicholas each filed a charge of discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission. In her charge, Elizabeth claimed that she was the victim of sex discrimination. She claimed that she was subject to "unequal wage" because the compensation for her "trailing spouse" was not equal to the compensation given to a male IGPA faculty member. She also claimed that she had not been compensated for her work on the study and was not paid for work she performed during the summer of 2005 and the 2005-2006 academic year during her sabbatical period. In his charge, Nicholas also claimed that he was the victim of sex discrimination. He claimed that he was employed as a trailing spouse and was "subject to unequal pay continuing through May 2, 2006, in that [he was] denied

pay rightfully earned for work [he] completed on a study for the Illinois General Assembly." He claimed that the University did "pay female trailing spouse/partner hires for work performed."

On June 8, 2006, Larry Mann, Executive Assistant Vice President for Academic Affairs at the University, wrote a letter to Elizabeth stating "we need to bring closure to this negotiation." Mann also stated, "[i]f you are unwilling to complete the study under the terms specified in the June 2, 2006, letter, this study will be assigned to someone else to complete." On June 14, 2006, Plaintiffs wrote a letter to Rich and stated that they agreed "on the broad outline of terms" set out in the June 2 letter but insisted that retirement contributions needed to be made to Nicholas' account with the State University Retirement System (SURS). Plaintiffs also made a proposal regarding the allocation of the proposed $22,000 payment to Elizabeth.

On June 16, 2006, Notices of Plaintiffs' charges of discrimination were received by University Counsel. The same day, June 16, 2006, Rich sent a letter to Plaintiffs and stated that, as he had previously stated in the June 2 letter, IGPA was prepared to pay Nicholas a lump sum of $13,611.11, contingent on written documentation of his activities between August 1 and November 15, 2005. Rich stated that no contribution would be made to SURS "because of SURS and university rules." Rich also stated that IGPA would pay Elizabeth $22,000, the equivalent of two summer months salary, for completion of the report, which was to be sent to the printer by July 15. Rich stated that this "is the sum total of the agreement that I am asking you to either accept or reject." Rich asked Plaintiffs to advise him by June 19, 2006, whether they planned to accept the agreement.

Plaintiffs' attorney, John H. Otto, wrote a letter to Rich the same day and stated that he had been retained by Plaintiffs "in connection with their attempt to be compensated for work they have

performed and will perform for [IGPA]." Otto disagreed with Rich regarding the issue of SURS contributions and stated that "SURS rules should not prohibit [Nicholas'] participation from August 1, 2005 to mid-November, 2005." Otto also stated that Rich's proposal may be discriminatory and urged him to "work with [Plaintiffs] in order to get accomplished what you all desire: To get the study done and to fairly compensate the persons doing it."

On June 19, 2006, Plaintiffs sent a letter to Rich and noted that Rich had not responded to Otto's letter. Plaintiffs then stated, "[s]ince we have no recourse, we accept the terms outlined in your June 16th 2006 letter under protest. We reserve all of our rights to pursue our claims in all other forums." On June 20, 2006, Rich responded to Otto's June 16 letter and stated that they were prepared to recommend a four-month half-time appointment for Nicholas which would provide him with $15,555,58 in salary and normal SURS contributions. Rich ended the letter by stating, "I am hopeful that we can reach an agreement in the very near future." On June 21, 2006, Elizabeth sent an email to Rich and stated "Nick and I are pleased that the end to these negotiations is again in sight. Our counsel and University's counsel will hammer out the details."

Subsequently, Otto and Laura D. Clower, Associate University Counsel, had discussions and exchanged emails regarding the terms of the agreement. On July 7, 2006, Clower sent Otto a proposed settlement agreement. The agreement provided for payment to Elizabeth of $22,000 and payment to Nicholas in the amount of $15,555,58, with applicable contributions to the SURS. The proposed settlement agreement also provided that Plaintiffs would dismiss any and all claims against the University in any forum. The proposed agreement also provided that Plaintiffs agreed that they would not sue the University or file any complaint, claim or charge against the University based on any conduct "occurring up to and including the date of the full execution of this Agreement." The

proposed agreement then provided a non-exclusive list of potential causes of action covered by the agreement not to sue.

Otto sent Clower a response by email the same day. He stated:

> I envision several sticking points with respect to your draft of a proposed agreement. I think it goes beyond anything we had discussed or agreed to in terms of the Powers giving up any rights to proceed with their IDHR claim or giving assistance to others in making such claims or non-disparagement. I think I told you that if everything else gets worked out, I think the IDHR claim will go away, but you have added a bunch of additional waiver of claims that goes far beyond a simple dismissal of the IDHR claim.

Otto also raised other issues regarding the proposed settlement and said he would send a draft of the settlement agreement with the changes he was proposing. Clower responded by email about 45 minutes later and stated "if the Powers aren't willing to resolve this dispute (i.e., they want NOT to release any and all claims related to this matter) that's a deal breaker–a settlement that doesn't settle a dispute isn't a settlement."

Otto and Clower communicated by email for the next few weeks but Plaintiffs did not sign a settlement agreement and the University did not make any payment to Plaintiffs regarding their claim for additional compensation for work performed on the study. It is undisputed that the University determined not to pay Plaintiffs for the work they had performed on the study until all issues resolving all of the controversies with the University had been resolved.

PROCEDURAL HISTORY

On November 4, 2008, Plaintiffs filed their Complaint (#1) in this case against the University, which included 10 Counts. In Count I, Plaintiffs alleged that the University paid Elizabeth wages at a rate less than it paid to a male employee for equal work in violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d). In Count II, Plaintiffs alleged that Nicholas, as a male trailing spouse, was not paid for work he performed for the University at the request of Rich, in violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d). In Count III, Plaintiffs alleged that Elizabeth was entitled to recover for retaliation under the Federal Equal Pay Act. In pertinent part, Plaintiffs alleged that Elizabeth opposed the unlawful acts of the University in discriminating against Plaintiffs because of sex and, in retaliation for such opposition, the University "refused to pay her for work she had performed in behalf of [IGPA], and for which [IGPA] had agreed to pay her, unless she withdrew her charges of discrimination and agreed not to file any further charges." In Count IV, Plaintiffs alleged that Nicholas was entitled to recover for retaliation under the Federal Equal Pay Act. In pertinent part, Plaintiffs alleged that Nicholas opposed the unlawful acts of the University in discriminating against Plaintiffs because of sex and, in retaliation for such opposition, the University "refused to pay him for work he had performed in behalf of [IGPA], and for which [IGPA] had agreed to pay him, unless he withdrew his charges of discrimination and agreed not to file any further charges." In Counts V and VI, Plaintiffs alleged that the University's failure to pay them for the work they performed violated the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq. In Counts VII and VIII, Plaintiffs alleged violations of the Illinois Equal Pay Act of 2003, 820 Ill Comp. Stat. 112/10. In Count IX and X, Plaintiffs alleged that the University retaliated against them for opposing unlawful practices under the Illinois Equal Pay Act.

On June 2, 2009, the University filed its Answer (#8) to the Complaint, denying many of Plaintiffs' allegations. The University also raised several affirmative defenses, including its assertion that Plaintiffs' claims under the Federal Equal Pay Act are barred by the statute of limitations. On July 8, 2009, this court entered a Discovery Order (#11) in this case. This court set the case for a final pretrial conference on February 25, 2011 and a jury trial on March 14, 2011.

On November 1, 2010, Plaintiffs filed a Motion for Partial Summary Judgment (#39). Plaintiffs argued that they were entitled to summary judgment on Counts III, IV, V, VI, IX and X of their Complaint. On February 8, 2011, this court entered an Opinion (#43) and denied Plaintiffs' Motion for Partial Summary Judgment. In doing so, this court concluded that a reasonable inference can clearly be made in this case that Rich and the University were trying to negotiate a settlement agreement which would completely resolve the ongoing dispute with Plaintiffs regarding the work Plaintiffs performed on the study following the date the study was supposed to be completed. Therefore, a reasonable inference could be made that Rich's letter dated June 16, 2006, was an offer to settle the entire dispute, which Plaintiffs never accepted. The evidence showed that Plaintiffs' counsel wrote a letter on June 16, 2006, and suggested different terms, some of which actually were included in the proposed settlement agreement provided to Plaintiffs on July 7, 2006. In addition, an inference could be made that Plaintiffs' purported acceptance on June 19, 2006, included additional terms (that they reserved their rights to pursue their claims in all other forums) and was not effective to accept the terms offered by Rich. Plaintiffs' June 19, 2006, letter showed that they were unwilling to dismiss their charge of discrimination which, to a large extent, related to the dispute over payment for work Plaintiffs performed on the study.

This court also concluded that it was reasonable to infer that the University included standard

release of claims terms in its proposed settlement agreement in an attempt to resolve all of the disputes between the University and Plaintiffs. This court stated that a reasonable inference could be made from the evidence that no settlement agreement was ever reached between the parties and no payment was made to Plaintiffs for that reason. This court therefore agreed with the University that a genuine dispute regarding Plaintiffs' retaliation claims exists and the claims must proceed to trial.

This court also concluded that Plaintiffs had not shown that they were entitled to summary judgment on their Minimum Wage Law claims. This court stated that Plaintiffs would have the opportunity to present all of their claims to a jury, but they were not entitled to summary judgment on any of their claims.

The final pretrial conference scheduled for February 25, 2011 was not held because, due to a conflict in this court's calendar, the jury trial scheduled for March 14, 2011, was vacated. On March 1, 2011, a status conference was held and a Pretrial Order (#53) was filed. A settlement conference was held on May 10, 2011, before Magistrate Judge John A. Gorman. No settlement was reached, so this court will proceed to rule on the pending pretrial motions in this case.

## PENDING MOTIONS

### I. MOTIONS IN LIMINE

#### A. STANDARD

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's

inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." Jonasson, 115 F.3d at 440. Therefore, the moving party bears the burden of establishing that the evidence is not admissible for any purpose. Mason v. City of Chicago, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Unless this high standard is met, rulings on evidentiary matters must be deferred until trial so that issues of foundation, relevance and prejudice may be resolved in the proper context. Mason, 631 F. Supp. 2d at 1055-56; Townsend v. Benya, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003); see also Jonasson, 115 F.3d at 440.

### B. PLAINTIFFS' MOTION IN LIMINE

Plaintiffs included 16 requests in their Motion in Limine (#49). The University filed a Response to the Motion (#57). In their Motion, Plaintiffs first asked this court to bar the University from presenting evidence or arguing that Plaintiffs did not mitigate damages. Plaintiffs argued that this is an affirmative defense which was not raised by the University. In its Response, the University agreed that mitigation of damages is not an applicable defense in this case. Accordingly, this request is GRANTED.

Plaintiffs next asked that the University be barred from presenting evidence or arguing that Plaintiffs were paid a "lump sum" to produce the study. This court agrees with the University that the evidence shows that Plaintiffs were obligated to produce a finished product on or before March 31, 2005, with the terms of salary in connection with this work specified. This court further agrees

that the evidence shows that Plaintiffs were fully paid under the terms of this agreement and the dispute at issue in this case is with respect to Plaintiffs' request for payment beyond the amounts agreed after failing to meet the deadline for submitting a final report. Obviously, evidence of the agreement and what Plaintiffs were paid for their work on the study goes to the heart of the dispute in this case and Plaintiffs have provided no basis for limiting evidence or argument relating to this issue. Plaintiffs' second request is DENIED.

Plaintiffs' third request is for an order barring evidence or argument that Plaintiffs did not adequately perform their duties for the University. In its Response, the University again noted that it is undisputed that Plaintiffs were employed to produce a final report on the study by March 31, 2005, but failed to do so. The University stated that the dispute between the parties pertained to the fact that Plaintiffs failed to finish the project and demanded additional payments. This court agrees with the University that the evidence Plaintiffs are seeking to prohibit was the focus of discovery in this case and is manifestly relevant to the issues. Plaintiffs' third request is DENIED.

For their fourth request, Plaintiffs asked this court to bar evidence and argument that the sabbatical policy at the University is anything other than the official written "Guidelines for Official Leaves of Absences." In its Response, the University stated that it does not dispute the plain language of the Guidelines. The University argued, however, that the evidence will be that Elizabeth started a sabbatical on or about August 15, 2005, and, as of that date, had not yet completed the final report on the study which was due March 31, 2005. Discussions and requests before and after August 15, 2005, for the final report took place with Elizabeth and various administrators of the University. The University stated that deposition testimony disclosed evidence that it is a "common practice" for professors to carry on their professional duties during sabbatical,

in order to meet obligations and deadlines to which they had previously committed. This court agrees with the University that this evidence is relevant and concludes that Plaintiffs have provided no reason why it should be barred. Plaintiffs' fourth request is DENIED.

Plaintiffs' fifth request is for an order barring evidence or argument that Elizabeth did not actually work on the study from May 16, 2005 to November 15, 2005 and from May 16, 2006 to August 15, 2006. Plaintiffs argued that "the evidence is uncontradicted that she worked on the study during those periods of time." In its Response, the University pointed out that the original terms of the agreement with Elizabeth for work on the study provided that she was to work "subject to consultation and oversight with the Director of IGPA." The University stated that, during the dates referenced in this request, Elizabeth failed to consult or give the Director of IGPA any opportunity to exercise oversight with respect to her work. The University stated that it is therefore unable to present evidence as to when Elizabeth did or did not work on the study during those dates. The University stated that the evidence will show that Elizabeth did not submit a final report during those dates and this evidence is relevant and should be permitted. This court agrees with the University. Plaintiffs' fifth request is DENIED.

Plaintiffs' sixth request asked for the same order regarding work performed by Nicholas for the same dates referenced in the fifth request. The University provided essentially the same response, which this court finds persuasive. Plaintiffs' sixth request is DENIED.

Plaintiffs' seventh request is for an order barring evidence or argument that Nicholas stole anything from the University. In its Response, the University stated that it does not contend that Nicholas stole anything. It stated, however, that it did request that Nicholas return a laptop computer. The University argued that, in the event that Nicholas is permitted to present evidence

that he was accused of theft, it should be allowed to respond. Because there appears to be no dispute that Nicholas did not steal anything from the University, Plaintiffs' seventh request is GRANTED, in part. Plaintiffs' seventh request is DENIED, in part, to the extent that the University will be allowed to respond if Plaintiffs present evidence that he was accused of theft.

For their eighth request, Plaintiffs asked for an order barring evidence or argument that Rich did not meet with David Merriman on May 3, 2006, citing a failure by the University to provide Rich's calendar even though Plaintiffs "repeatedly" requested Rich's calendar for that time period. In its Response, the University pointed out that Plaintiffs failed to specify the discovery requests referenced in this paragraph. The University stated that Rich's electronic calendar was not available due to system failure for the various months in 2006 requested by Plaintiffs. The University stated that Plaintiffs were advised of this fact and, despite the University's request, did not specify which date they requested for a paper copy of Rich's calendar. The University stated that, now, Plaintiffs have specified May 3, 2006. The University stated that it has responded to all of Plaintiffs' discovery requests in good faith and denied that it has refused to produce any legitimately requested information that was available. The University has correctly pointed out that Plaintiffs did not file a motion to compel or any other motion with this court relating to discovery responses by the University. The University argued that, although the relevance of whether Rich met with Merriman on May 3, 2006 is unclear, it should not be prohibited from responding to whatever evidence Plaintiffs submit with respect to this purported meeting or absence of meeting. This court agrees with the University that Plaintiffs have not provided any basis for excluding this evidence and Plaintiffs' eighth request is DENIED.

For their ninth request, Plaintiffs asked this court to enter an order barring evidence or

argument that there is not a written employment contract between Kay Mulhall and IGPA, stating that they requested a copy of any such contract but it was not provided. This court is somewhat confused by the double negatives, but based upon a literal reading of Plaintiffs' request it appears that Plaintiffs want to preclude the University from claiming that Mulhall does not have a written employment agreement. In response, the University argued that Plaintiffs did not identify the discovery request referenced in this paragraph and recognized the vagueness of Plaintiffs' request of this court. The University then stated that Mulhall does not have a written employment agreement with IGPA but does, like all University employees, have a contract with the Board of Trustees. The University further stated, affirmatively, that Mulhall was not a spousal hire. Plaintiffs' rather confusing and unsupported request is DENIED.

For their tenth request, Plaintiffs asked this court to enter an order barring evidence or argument contradicting Elizabeth's testimony on how the money for the study was spent. Plaintiffs stated that they repeatedly requested the accounting records for the study, but the University failed to produce it. In its Response, the University noted that Plaintiffs did not identify their repeated request by reference to written discovery. The University stated that accounting records for the study were, in fact, produced and will speak for themselves if admitted into evidence at trial. This court concludes that Plaintiffs have not provided an adequate basis for barring this evidence and their tenth request is DENIED.

Plaintiffs' eleventh request is for an order barring evidence or argument contradicting the salaries listed in the University's Grey Book of salaries. Plaintiffs stated that they repeatedly requested salary information from the University and were told they had to obtain the information from the Grey Book. In response, the University pointed out that Plaintiffs did not identify their

repeated requests with reference to any discovery requests. The University further stated that the Grey Book was accurate with respect to the information listed. The University also stated that supplemental payments, such as payments for summer work are not listed in the Grey Book and other forms of compensation, such as grant funding, may not be listed in the Grey Book. This court concludes that Plaintiffs have not provided an adequate basis for barring evidence of supplemental and other forms of compensation not listed in the Grey Book. This request is DENIED.

Plaintiffs, for their twelfth request, have asked this court to enter an order barring any evidence or argument contradicting the fact the there is no job performance rating system in place in either IGPA or the Economics Department. In its Response, the University noted that the term "rating system" is ambiguous. The University further denied the accuracy of the representation made by Plaintiffs. The University stated that deposition testimony by Robert Rich of IGPA and Steve Williams of the Department of Economics set forth the manner in which professors are evaluated in each department. The University stated that this evidence showed that the head of IGPA annually evaluates each professor and that evaluation is communicated to the professor on an annual basis. In the Department of Economics, the department head utilizes that Executive Committee for evaluations. Where there is a joint appointment, the head of IGPA speaks to the head of the Department of Economics with respect to job performance and recommendations for salary increases. This court concludes that Plaintiffs have not shown they are entitled to an order barring this evidence. Plaintiffs' twelfth request is DENIED.

Plaintiffs' thirteenth request is for an order barring any evidence or argument that contradicts the fact that Plaintiffs submitted a final report, executive summary and primer no later than provided for in the University's June 16, 2006 offer letter. In its Response, the University stated that, in fact,

the evidence is undisputed that Plaintiffs did not submit a final report, executive summary and primer to the Director of IGPA by the date specified in the June 16, 2006 correspondence, despite the fact that they were obligated to work "subject to consultation and oversight with the Director of IGPA." The University stated that, instead, the information was sent to the printer and the Director of IGPA did not discover this until the printer asked for authorization. The Director of IGPA had to obtain the information from the printer, not from Plaintiffs, on a date beyond the times specified in the June 16, 2006 letter. This court concludes that the evidence is clearly contrary to Plaintiffs' assertion and this request is DENIED.

Plaintiffs' fourteenth request is for an order barring evidence or argument contradicting the fact that there are no male faculty members with an appointment in IGPA or the Department of Economics who were required to perform their regular duties for IGPA (i.e. public service work or committee work) while on sabbatical with reduced pay. Plaintiffs stated that they requested this information and the University refused to produce it. The University again noted that Plaintiffs failed to identify the discovery requests referenced in this paragraph. The University also denied that it refused to produce any requested information which was available and not subject to objection. The University stated, however, that no faculty member, male or female, with an appointment in IGPA or the Department of Economics was required to perform regular duties while on sabbatical at reduced pay. The University stated affirmatively that, as a matter of professionalism, there is an expectation that faculty members will carry out commitments to complete work which is uncompleted and past due, regardless of whether they are on sabbatical. This court concludes that Plaintiffs have not shown that there is a basis for barring this evidence and Plaintiffs' fourteenth request is DENIED.

For their fifteenth request, Plaintiffs asked this court to enter an order barring evidence or argument contradicting the fact that there are no male faculty members with an appointment in IGPA or the Department of Economics who were required to perform their regular duties for IGPA (i.e. public service work or committee work) while not on their 9-month academic appointment (i.e. May 16 to Aug. 15) without pay. Plaintiffs stated that they requested this information by means of interrogatory and requests to produce and the University refused to produce it. The University responded by again stating that Plaintiffs failed to identify the request for information referenced in this paragraph. The University stated that it denied that it refused to produce any information subject to a request for production and affirmatively stated that it produced all available information requested which was not subject to privilege. The University admitted, however, that all faculty members, whether male or female, are not required to perform regular duties while not on the 9-month academic appointment, without pay. The University further stated that there is an expectation, as a matter of professionalism, that faculty members, both male and female, will perform duties which they have committed to perform and which are past due while not on their 9-month academic appointment and such is done as a matter of common practice. The University stated that it is also a matter of common practice that academic committees, from time to time, meet after May 16, as a matter of professionalism. The University stated that this was the subject of testimony in the deposition of Robert Rich. This court concludes that Plaintiffs have not shown any reason why this evidence should not be admitted at trial. Plaintiffs' fifteenth request is DENIED.

Plaintiffs' last, sixteenth, request is for an order barring any evidence or argument contradicting Plaintiffs' list of persons with an appointment in IGPA or the Department of Economics who have a spouse or significant other with an appointment with the University of

Illinois (including zero-time appointment). Plaintiffs argued that they repeatedly requested this information from the University by means of interrogatory and requests to produce and the University refused to produce it. In its Response, the University noted that the list referenced in this paragraph is not specifically identified. The University stated that, if Plaintiffs are referencing Plaintiffs' Exhibit 136, the University denied the accuracy of the list. The University stated that the list is without foundation and consists of Plaintiffs' unfounded opinions. The University further stated that Plaintiffs did not identify the discovery requests referenced and the University denied that it refused to produce information in response to legitimate discovery. The University argued that Plaintiffs have failed to provide sufficient information to justify allowance of this paragraph in their Motion in Limine. This court agrees with the University's argument. Plaintiffs' sixteenth request is DENIED.

### C. THE UNIVERSITY'S MOTIONS IN LIMINE

#### 1. FIRST MOTION IN LIMINE

The University included three requests in its First Motion in Limine (#47). Plaintiffs have filed a Response to the Motion (#55) with an attached exhibit. The University's first request is for an order barring Plaintiffs from presenting evidence or argument identifying males who, from the academic year 2005-2006 through the academic year 2008-2009, were at the same level as Elizabeth and received higher wage increases for equal work on jobs the performance of which required equal skill, effort and responsibility and which were performed under similar working conditions. The University stated that Plaintiffs claimed in their Complaint that Elizabeth received lower wage increases than male employees "at the same level for equal work on jobs, the performance of which requires equal skill, effort and responsibility and which are performed under similar working

conditions." The University stated that Plaintiffs did not identify any such persons in their response to interrogatories and did not supplement their answers to identify any such persons.

In their Response, Plaintiffs stated that information as to the wage increases enjoyed by comparable male employees is uniquely in the possession of the University. Plaintiffs stated that they requested this information and the University refused to produce it. Plaintiffs attached the University's Response to Plaintiffs' First Request to Produce and noted that the University referred them to the Grey Book, which the University stated was available in the reference room of the University Library. Plaintiffs did not directly dispute that the Grey Book was available in the University Library but stated that the Grey Book was not provided for Plaintiffs' inspection until after August 31, 2010. Plaintiffs stated that they prepared an exhibit which summarizes the information in the Grey Book. Plaintiffs stated that the University is now objecting to this summary. Plaintiffs stated that there is nothing prejudicial about the exhibit and it should be admitted.

This court is reluctant to preclude Plaintiffs from introducing this evidence based upon an alleged discovery violation which is less than clear. Therefore, the University's first request is DENIED. This court notes, however, that evidence must be relevant before it can be admitted at trial. To prevail on her equal pay claim, Elizabeth must show that "higher wages were paid to a male employee" for "equal work requiring substantially similar skill, effort and responsibilities" that was "performed under similar working conditions." See Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 656 (7th Cir. 2010), quoting Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 685 (7th Cir. 1998). Therefore, Plaintiffs cannot just present evidence that the persons listed on their summary received salary increases. In order to be relevant to Elizabeth's equal pay claim and therefore admissible at trial, Plaintiffs' evidence must include facts to show "who these employees were, what

their duties were, when they started work, where they worked, and what their backgrounds were."
See Goodman, 621 F.3d at 657. If Plaintiffs cannot show that the salary increases were given to male employees for equal work requiring substantially similar skill, effort and responsibilities that was performed under similar working conditions, the evidence is not relevant and will not be admitted.

For its second request, the University has asked for an order barring Plaintiffs from presenting evidence or argument in support of their allegation that Nicholas was not paid for work he performed for the University at the request of Robert Rich while female employees of the University who performed work at the request of Rich were paid for such work. The University stated that Plaintiffs had not identified during discovery any female employees of the University who were compensated for work performed at the request of Robert Rich. The University stated that allowing Plaintiffs to present this evidence without discovery compliance would be highly prejudicial.

In their Response, Plaintiffs argued that there was complete discovery compliance by Plaintiffs, contending that they received no information from the University to contradict Plaintiffs' original answer to the interrogatory, which was that, with the exception of Elizabeth, all female employees on the staff were compensated for work they performed.

Again, this court is reluctant to bar evidence based upon a purported discovery violation which is not entirely clear. Therefore, the University's second request is DENIED. Again, however, this court notes that any evidence presented by Plaintiffs regarding this issue must be relevant to the claim.

In the University's third and last request for an in limine order, the University stated that

Plaintiffs' Complaint alleged that Nicholas was not allowed to work for the University as a trailing spouse while female trailing spouses of professors were permitted to work for the University. The University stated that Nicholas was employed as Elizabeth's spouse from July 25, 1996 through 1999. The University stated that he did not have full-time employment with the University thereafter until 2004. The University stated, with no real explanation, that any claim associated with "trailing spouse" hiring is time-barred. The University also stated that, in their answers to interrogatories, Plaintiffs identified a male professor whose girlfriends were given permanent positions at the University and another male professor whose wife was given a position. The University stated that no information has developed during discovery reflecting a trailing spouse position with respect to either of the two professors named by Plaintiffs. The University asked this court to bar evidence with regard to trailing spouse employment at the University because such evidence would be confusing to the jury, would be without foundation or basis and was not properly disclosed.

In their Response, Plaintiffs first strongly disagreed that this claim is time-barred. This court concludes that this issue cannot be properly determined in ruling on a motion in limine. An argument that Nicholas' claim is time-barred should have been raised by the University in a motion for summary judgment, supported by evidence. The University did not file such a motion and the time to do so passed a very long time ago. This court will not decide this issue in ruling on the motion in limine. Plaintiffs also argued that they complied with discovery and the University did not.

This court concludes that the University has not shown that this evidence should be barred. The University's third request is DENIED.

## 2. SECOND MOTION IN LIMINE

In its Second Motion in Limine (#48), the University asked this court to enter an order barring any evidence or argument regarding violations of any of Plaintiffs' constitutional or statutory rights prior to June 5, 2001.  The University noted that Plaintiffs filed their discrimination charges with the EEOC on June 5, 2006 and the applicable limitations period for a cause of action premised on the Federal Equal Pay Act is two years, 29 U.S.C. § 206(d), with the statute providing for a three-year limitations period for conduct that was willful, 29 U.S.C. § 255(a).  The applicable limitations period for a cause of action premised on the Illinois Equal Pay Act is five years, 820 Ill. Comp. Stat. 112/30 (West 2006).  The University argued that any evidence of purportedly wrongful conduct by the University before June 5, 2001 is not relevant to allegations contained in Plaintiffs' Complaint, would result in prejudice to the University and is time-barred by the applicable statutes of limitations.

Plaintiff filed a Response (#56).  Plaintiffs do not dispute that they are not entitled to and are not seeking damages for any conduct before June 5, 2001.  Plaintiffs argue, however, that they are entitled to present evidence as to the entire course of conduct of the University to explain what happened within the time period covered by the statute of limitations.  Plaintiffs argued that this is a "continuing violations" case so that they can present evidence of earlier behavior outside the statute of limitations as part of its proof.  Plaintiffs contended that precluding this evidence would irreparably prejudice them in presenting a coherent case to the jury.

First of all, this court notes that courts have held that the continuing violation doctrine is not applicable to Equal Pay Act claims.  See Metz v. Joe Rizza Imports, Inc., 700 F. Supp. 2d 983, 993 (N.D. Ill. 2010 (continuing violation doctrine did not apply to the Illinois Equal Pay Act prior to its

amendment in 2009 and was not applicable to charge filed in 2005); Hildebrandt v. Ill. Dep't of

Natural Res., 132 F. Supp. 2d 674, 683 (C.D. Ill. 2001) (continuing violation doctrine does not apply

to cases brought under the Federal Equal Pay Act). Therefore, the parties are correct that Plaintiffs

can only seek recovery for conduct which occurred after June 5, 2001.

This court notes that it is now May 2011. The University is only seeking to bar evidence of

conduct which took place before June 5, 2001, approximately ten years ago. This court concludes

that it would be confusing and burdensome to subject the jury to evidence of conduct which

occurred more than ten years ago which cannot form the basis for any recovery by Plaintiffs. The

University's Second Motion in Limine (#48) is GRANTED.

## II. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs have filed a Motion to Strike John Otto from Defendant's Witness List (#58).

Plaintiffs stated that their attorney, John Otto, was listed as a witness on the University's witness

list. Plaintiffs stated that their counsel "made the mistake of listing himself in Plaintiffs' Pretrial

Disclosures as someone with knowledge of the facts of the case." They noted that, pursuant to this

court's order, the deposition of Otto was taken. Plaintiffs attached a copy of the transcript of the

deposition, which was taken on September 30, 2010. Plaintiffs argued that the deposition "disclosed

no new information which the [University] had not already obtained from Plaintiffs and from

documents produced by both parties." Plaintiffs stated that the University took no steps to notify

Otto that it intended to call him as a witness at trial and stated that they did not see the University's

witness list, which listed Otto as a witness, until the day before the final pretrial conference was

scheduled in this case. Plaintiffs argued that Otto cannot provide testimony in this case based upon

Rule 3.7 of the Illinois Supreme Court Rules of Professional Conduct. Plaintiffs argued that it is

clear that the University has listed Otto as a witness only to try to disqualify Plaintiffs' counsel at the last minute and disadvantage the Plaintiffs. They noted that Otto has been in this case for nearly five years and is uniquely knowledgeable regarding the facts and the law of this case.

The University has filed a Response (#59). The University noted that Plaintiffs claim that the University offered to pay them for work they performed, an offer they accepted on June 19, 2006. The University stated that its position "is that no settlement agreement was reached because after the Plaintiffs purported to accept the [University's] offer, they continued to negotiate additional terms with [the University] through their attorney, John Otto." The University further stated that a disputed issue with respect to Plaintiffs' retaliation claim is whether there was a final agreement by offer and acceptance of the University's June 15, 2006 settlement offer or whether the parties' continued negotiations, through John Otto, reflects the fact that there was no enforceable contract between the parties. The University noted that Otto proposed terms beyond those offered by the University on behalf of Plaintiffs and has knowledge of relevant communications with the University. The University stated that Otto's deposition was taken and Otto testified regarding a conference call with Laura Clower, the status of his negotiations with Rich and Clower, and, specifically, what points he understood to be settled and what points were still in contention. The University stated that, because of Otto's intimate involvement in the negotiations at issue as demonstrated in his deposition, it listed him as a witness. The University asked this court to deny Plaintiffs' Motion to Strike Otto from the witness list because: (1) the testimony of Otto is necessary for the University to rebut and defend against Plaintiffs' retaliation claim; (2) no surprise is involved with the designation of Otto as a witness; and (3) the University has not engaged in tactical maneuvering and has not moved to have Otto or his law firm disqualified as counsel for Plaintiffs.

This court notes that it has already ruled on a related issue. On September 23, 2010, this court entered an Opinion (#36) which denied Plaintiffs' Motion to Quash Subpoena. This court addressed Plaintiffs' strong objections but concluded that the University could take Otto's deposition. In doing so, this court noted that Otto's law firm was disclosed in Plaintiffs' Answers to Interrogatories as having information regarding the occurrences complained of and damages. This concluded that the University had shown that Otto's deposition should be taken in this case "based upon Otto's involvement in the negotiations and Plaintiffs' conflicting statements regarding whether agreement was reached between Plaintiffs and the University."

As noted, Otto's deposition was taken on September 30, 2010, and a transcript has been provided to this court. After review of the transcript, this court cannot agree with Plaintiffs that Otto's testimony provided no new information. In fact, the University is correct that Otto testified regarding the claims which were resolved by the University's settlement offer and the claims Otto believed were not resolved. This court therefore agrees with the University that it may call Otto as a witness at trial and there is no basis for striking Otto's name from the University's witness list.

This court first concludes that the situation facing the court and the parties in this case is a problem of Plaintiffs' own making. Plaintiffs' claims are clearly based, in part, on allegations that they reached agreement with the University and the University failed to pay them pursuant to the terms of the agreement in retaliation for their refusal to withdraw certain of their claims. Otto was representing Plaintiffs at the time of these alleged events and was involved in the negotiation of an agreement. Plaintiffs therefore honestly disclosed Otto and his law firm as persons having information regarding the occurrences complained of. Otto was the only one involved in negotiating

on behalf of Plaintiffs and is the only source of that information.  See AAA Plumbing Pottery Ass'n v. St. Paul Ins. Co. of Ill., 1995 WL 608548, at *4 (N.D. Ill. 1995); see also Finn v. Harbor Metal Treating Inc., 2009 WL 3642753, at *3 (N.D. Ind. 2009) (attorney was a necessary witness where he was one of only a few persons involved in making the contract which was the subject of the dispute).

This court recognizes that there are potential problems involved in calling opposing counsel to testify at trial.  See Johnstone v. Wabich, 220 F. Supp. 2d 899, 901-02 (N.D. Ill. 2002).  However, unlike the situation in Johnstone, the University has shown that the testimony it is seeking is relevant to a major issue and there are no other means for obtaining the relevant information.  See AAA Plumbing, 1995 WL 608548, at *4.  Therefore, this court concludes that Otto is a necessary witness in this case.

This court also agrees with the University that Plaintiffs' claims of surprise ring hollow. Otto had to have been aware of the potential that he could be called as a witness based upon the central importance of the negotiations and purported settlement to Plaintiffs' claims.  In fact, Plaintiffs disclosed Otto and his law firm as persons having knowledge of the facts of this case.  This court concludes that this was not a "mistake" but rather an honest assessment.  In addition, the University has asserted that, on July 27, 2009, it listed Otto in its initial disclosures as a person having knowledge of relevant information.  In any case, Otto was certainly put on notice of the problem when this court entered an Opinion finding that Otto's deposition should be taken in this case "based upon Otto's involvement in the negotiations and Plaintiffs' conflicting statements regarding whether agreement was reached between Plaintiffs and the University."

Plaintiffs have also argued that the University listed Otto on its witness list for purposes of

harassment and to prevent Otto from representing them at trial, to their prejudice. This court does not agree.

This court has adopted the Illinois Supreme Court Rules of Professional Conduct. <u>Anderson v. Nicholson</u>, 2008 WL 2782756, at *1 (C.D. Ill. 2008), <u>citing</u> Rule 83.6(D) of the Local Rules of the Central District of Illinois. Rule 3.7 of the Rules of Professional Conduct[2] provides:

**Rule 3.7. Lawyer as Witness**

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

This court concludes that this rule does not necessarily preclude Otto from continuing his representation of Plaintiffs even though this court has ruled that he can be called as a witness at trial. This court notes that the University has only argued that Otto can be called as a witness and has not

---

[2] This court is setting out the new version of this rule which was adopted on July 1, 2009 and was effective January 1, 2010.

argued that Otto, or his law firm, must be disqualified from participating in the trial as counsel.[3]  It has been held that an attorney is prohibited from participating in a trial only if his testimony is or may be prejudicial to his client.  See Drago v. Davis, 1996 WL 479696, at *6 (N.D. Ill. 1996), citing Stopka v. Alliance of Am. Insurers, 1996 WL 204324, at *4 (N.D. Ill. 1996).  This is something that Plaintiffs and their attorney will have to determine.

Because this court agrees with the University that Otto is a necessary witness in this case, Plaintiffs' Motion to Strike John Otto from Defendant's Witness List (#58) must be denied. Therefore, this court does not need to address Plaintiffs' rather outrageous request that this court limit the testimony of Laura Clower if this court grants their motion and Otto does not testify at trial.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs' Motion in Limine (#49) is GRANTED in part and DENIED in part.

(2) The University's First Motion in Limine (#47) is DENIED.

(3) The University's Second Motion in Limine (#48) is GRANTED.

(4) Plaintiffs' Motion to Strike John Otto from Defendant's Witness List (#58) is DENIED.

(5) This case remains scheduled for a status conference on June 1, 2011, at 3:30 p.m. by personal appearance.

ENTERED this 27th  day of May, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

---

[3]  For this reason, Plaintiffs' reliance on Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 777 F. Supp. 690 (C.D. Ill. 1991) is misplaced.